IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 8:10CR283 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| DARROW FOWLER, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the court on the defendant's objections, Filing No. 35, to the findings and recommendations ("F&R") of the magistrate judge, Filing No. 33, denying defendant's motion to suppress, Filing No. 16. The defendant objects to the magistrate judge's findings, and argues that (1) the officers had no reasonable suspicion to detain him, (2) the officers had no probable cause to arrest, and (3) defendant has standing to challenge the seizure of the DNA profile. See Filing No. 35. Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a *de novo* determination of those portions of the F&R to which the defendant objects. *United States v. Lothridge,* 324 F.3d 599, 600-01 (8th Cir. 2003). The court agrees with the magistrate judge's application of the law to the facts of this case. Accordingly, the court will adopt the F&R in its entirety.

**FACTS**

While conducting routine surveillance of Laird Street in Omaha, Nebraska, two officers saw the defendant, Darrow Fowler, walking through the neighborhood. The particular house located at 1611 Laird was being watched by Omaha police officers for illegal activity by the Murder Town Gangsters street gang. It had been targeted by police

as a result of neighborhood complaints of drug activity. The police suspected defendant of gang activity. Because it was late at night, the house in question was a known drug house, and they believed the defendant had a history of criminal activities, the officers approached the defendant and asked him to stop. According to the officers, the defendant increased his gait, so the officers became suspicious of him and decided to pursue him. Two witnesses testified that the defendant maintained a steady gait as he walked. The defendant ignored the police, kept walking, and entered the property located at 1615 Laird Street. The officers followed the defendant, and one officer heard a noise which sounded like something being thrown against the fence and observed defendant make a sideways throwing motion. The officers searched the area where they heard the noise and found a bag of cocaine. The officers also saw the defendant brush up against a trash can. The officers searched this area and found a bag of crack cocaine by the fence and also found a loaded gun on top of the trash can.

      The officers arrested the defendant and took him to the police station. One of the officers asked the defendant to submit to DNA testing in order to compare his DNA with the fingerprints on the gun, but the defendant refused to give his consent on the grounds that the officers illegally detained and arrested him without just cause. The officers prepared an affidavit and warrant. The state court judge ordered the defendant to submit to DNA testing. The defendant objects on the grounds that the magistrate judge failed to address the suppression of the DNA profile even though defendant raised the issue in his motion to suppress, Filing No. 16, and brief in support thereof, Filing No. 17 and Filing No. 26.

as a result of neighborhood complaints of drug activity. The police suspected defendant of gang activity. Because it was late at night, the house in question was a known drug house, and they believed the defendant had a history of criminal activities, the officers approached the defendant and asked him to stop. According to the officers, the defendant increased his gait, so the officers became suspicious of him and decided to pursue him. Two witnesses testified that the defendant maintained a steady gait as he walked. The defendant ignored the police, kept walking, and entered the property located at 1615 Laird Street. The officers followed the defendant, and one officer heard a noise which sounded like something being thrown against the fence and observed defendant make a sideways throwing motion. The officers searched the area where they heard the noise and found a bag of cocaine. The officers also saw the defendant brush up against a trash can. The officers searched this area and found a bag of crack cocaine by the fence and also found a loaded gun on top of the trash can.

 The officers arrested the defendant and took him to the police station. One of the officers asked the defendant to submit to DNA testing in order to compare his DNA with the fingerprints on the gun, but the defendant refused to give his consent on the grounds that the officers illegally detained and arrested him without just cause. The officers prepared an affidavit and warrant. The state court judge ordered the defendant to submit to DNA testing. The defendant objects on the grounds that the magistrate judge failed to address the suppression of the DNA profile even though defendant raised the issue in his motion to suppress, Filing No. 16, and brief in support thereof, Filing No. 17 and Filing No. 26.

**DISCUSSION**

*A. Detention*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend IV; *United States v. Gannon*, 531 F.3d 657, 661-62 (8th Cir. 2008).  Indeed, the police may approach an individual and ask him a few questions, even if the police lack reasonable suspicion, so long as the encounter is consensual and "a reasonable person would feel free 'to disregard the police and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed.2d 389 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 113 L. Ed.2d 690 (1991)). *Gannon,* 531 F.3d at 661 n.2.

When the officers saw the defendant walk through the neighborhood and enter the property located at 1615 Laird, they asked the defendant to stop and he refused.  The defendant then entered the property.  The officers believed that there was some criminal activity taking place because it was very late at night and this house is known as a drug house.

The magistrate judge found there was initially no reasonable suspicion of criminal activity to stop and detain the defendant.  However, the magistrate judge determined that the officers had a reason to detain and arrest the defendant once the officers found the gun and the cocaine.  The magistrate judge found that the defendant had no standing to suppress the gun and the drugs because he abandoned them, and because he had no expectation of privacy in the place to be searched.  *See Minnesota v. Carter,* 525 U.S. 83, 88 (1998). The magistrate judge concluded that defendant failed to establish that he had any Fourth Amendment standing in the premises at 1615 Laird or the trash can located on

3

the premises or the rear of the house where officers located the crack cocaine. Further, as determined by the magistrate judge, a search, without a warrant does not violate the Fourth Amendment, when the item is abandoned. *United States v. James*, 353 F.3d 606, 615-16 (8th Cir. 2003). The court has stated:

> The law distinguishes between a seizure and a stop. *Terry v. Ohio*, 392 U.S. 1, 10, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968). While police must have probable cause in order to arrest (or seize) a person, they need only have reasonable suspicion that criminal activity is afoot to stop someone. *Id*. at 27, 88 S. Ct. 1868. There is no "neat set of legal rules" that governs the determination whether the police had reasonable suspicion. *United States v. Barker*, 437 F.3d 787, 789 (8th Cir.2006) (internal quotations omitted). An officer's suspicion is reasonable if he "knows particularized, objective facts that lead to a rational inference that a crime is being or has been committed." *United States v. Hernandez-Hernandez*, 327 F.3d 703, 706 (8th Cir.2003). But reasonable suspicion is more than an inarticulable hunch, it must instead be based on specific and articulable facts, which taken together with rational inferences, support the stop. *Terry*, 392 U.S. at 27, 88 S. Ct. 1868. To determine whether the police had reasonable suspicion, we must examine the totality of the circumstances. *Barker*, 437 F.3d at 790. We must consider these circumstances "through the eyes of the officers, because they are trained to cull significance from behavior that would appear innocent to the untrained observer." *Id*. (internal quotations omitted).

*Gannon*, 531 F.3d at 661.

This court agrees with the findings of the magistrate judge. There was not reasonable suspicion to detain the defendant in the first instance. However, when the defendant walked away, and according to the officers the defendant hurried away, entered the premises at 1615 Laird, and then threw something against the fence, the officers had reasonable suspicion and, as discussed below, probable cause, to stop and detain the defendant.

### B. Probable Cause

Officer Becker observed the defendant brush up against a trash can and then continue toward the rear of the house. Officer Becker searched this area and found a

loaded gun. Detective Sedlacek testified that he heard a noise that sounded like something hitting the fence. He searched this area and found cocaine. The magistrate judge determined that the officers had probable cause when the officers found the gun and the cocaine and thus had a reason to arrest the defendant.

"The Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred." *Florida v. White,* 526 U.S. 559, 565 (1999). "Probable cause exists when, at the time of the arrest, 'the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested.'" *United States v. Martinez,* 462 F.3d 903, 908 (8th Cir. 2006) (*quoting United States v. Kelly,* 329 F.3d 624, 628 (8th Cir. 2003)). "Probable cause exists if the totality of the circumstances known to all officers involved at the time of the arrest 'were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense.'" *United States v. Mendoza,* 421 F.3d 663, 667 (8th Cir. 2005). The magistrate judge concluded that once the officers found the crack cocaine and the gun, they had probable cause to arrest. This court agrees and adopts the magistrate judge's findings in this regard.

### *C. DNA*

After the arrest of the defendant, the officers asked the defendant to submit to DNA testing in order to compare defendant's DNA with the fingerprints obtained from the gun. The defendant refused to give consent. The state court judge ordered the defendant to submit to DNA testing. A buccal swab was taken from the defendant to obtain his DNA. It is very unclear from the record whether the prints on the gun matched the defendant's DNA. Counsel for the government testified that there were no fingerprint analysis done on

the baggie of cocaine. Accordingly, the magistrate judge found this issue to be moot. See Filing No. 32, Transcript, at Page ID #76, lines 22-25. Then, counsel also stated that "when they performed the DNA swab, there were not fingerprints that they could recover off the firearm." *Id*. at Page ID #77, lines 4-6. The magistrate judge then likewise determined that issue as moot. *Id*. However, Ms. Denton later testified that defendant and others had DNA on the weapon. After reviewing the record, the court is of the opinion that there was a DNA match to the defendant and will assume that for purposes of this motion the defendant's DNA is on the weapon at issue in this case.[1]

The defendant argues that the magistrate judge failed to address the suppression of DNA profile from defendant, and failed to find that the defendant has standing to challenge seizure of DNA profile. The court finds the magistrate judge made no findings on the DNA issue, but in fairness to the magistrate judge, the brief did not clearly state that the DNA swab was a suppression issue and counsel did not clearly articulate this issue during the hearing. However, the court has reviewed the argument of counsel and finds it is without merit. The only issues raised by the defendant is that the DNA samples should be suppressed because the officers lacked both reasonable suspicion and probable cause to detain and arrest, and the testimony that the defendant "hurried" was untrue. Filing No. 36 at 16. The court has already addressed these issues and agrees with the factual findings of the magistrate judge. Defendant makes no other arguments in regard to the DNA evidence.

---

[1] Part of the confusion might arise because there was an initial check on defendant's hands to determine if they had crack cocaine residue on them. They did not. This check was separate from the DNA swab to compare DNA to the fingerprints on the gun.

The officers presented an affidavit and warrant to the state court judge. The state court judge reviewed and signed the order. The swab was taken and processed accordingly. The DNA on the gun matched defendant's DNA, and there were other unknown contributors on the gun. Accordingly, the court finds no reason to remand this case to the magistrate judge for a hearing on the DNA swab and denies defendant's motion in this regard.

THEREFORE, IT IS ORDERED:

1. The defendant's motion to suppress, Filing No. 16, is denied.

2. The defendant's objections, Filing No. 35, are overruled.

3. The defendant's request for oral argument (Filing No. 39) is denied.

4. The findings and recommendation of the magistrate judge, Filing No. 33, is adopted in its entirety.

DATED this 18th day of February, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.